## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JIMMY HATFIELD**                                        CIVIL ACTION

**VERSUS**                                                      NO. 16-10933

**DARREL VANNOY, WARDEN**                    SECTION: "E"(5)

## ORDER AND REASONS

Before the Court is a Report and Recommendation issued by Magistrate Judge Michael North recommending the petition for federal habeas corpus relief, filed by Petitioner Jimmy Hatfield, be dismissed with prejudice.[1] Petitioner timely objected to the Magistrate Judge's Report and Recommendation.[2] For the reasons that follow, the Court adopts the Report and Recommendation as its own, and hereby **DENIES WITH PREJUDICE** Petitioner's application for relief.

## BACKGROUND

Petitioner is incarcerated at the Louisiana State Penitentiary in Angola, Louisiana, for second-degree murder of Herbert Joseph Shiloh.[3] On April 10, 2010, Shiloh was found dead in the apartment of Chiquita Spikes, who was Shiloh's girlfriend and Petitioner's former girlfriend.[4]

---

[1] R. Doc. 12. This Order refers to documents on this Court's CM/ECF docket as "R. Doc. [#]" and refers to the record before the Louisiana Fourth Circuit Court of Appeal, which consists of a paper docket only, as "R. Vol. [#]" For reference, the paper docket is split into nine volumes; the bottom of each page has been marked for citation purposes.

[2] R. Doc. 13.

[3] R. Doc. 3 at 21.

[4] *State v. Hatfield*, 2013-0813 (La. App. 4 Cir. 7/2/14), 155 So. 3d 572, 577, *writ denied*, 2014-1648 (La. 3/27/15), 162 So. 3d 383 [hereinafter State Appellate Opinion]. In the State Appellate Opinion, the Louisiana Fourth Circuit Court of Appeal summarizes the facts found at trial.

At trial, Spikes testified that, on April 9, 2010, the night before Shiloh was found dead, Petitioner followed Spikes, who was with her friend Shante Whitley, to several dance clubs.[5] Spikes testified that Petitioner approached her and asked her to dance and to kiss him.[6] When she refused, he pushed her, making her head hit a wall.[7] Spikes testified that Petitioner called her repeatedly, and Petitioner's cell phone records showed he called 45 times between 2:11 a.m. and 7:25 a.m. on the morning of April 10, 2010.[8]

Spikes' friend Whitley testified at trial for the State.[9] Whitley confirmed Spikes' testimony that Petitioner followed Spikes, had a physical altercation with her, and called her repeatedly throughout the night.[10] Whitley also testified that Petitioner called Whitley's cell phone and left a voicemail message, which was played for the jury.[11]

Searle Brown also testified for the State.[12] He testified that, early in the morning of April 10, 2010, Petitioner called him and said the person who his "baby momma messing with" had "got into it" and that he had been shot.[13] Petitioner's phone records showed the call took place at 6:10 a.m. on April 10, 2010.[14]

Cell phone records showed Petitioner was in the vicinity of Spikes' apartment between 5:00 a.m. and 5:30 a.m. on April 10, 2010.[15] The State's theory of the case was that Petitioner went to Spikes' apartment and shot and killed Shiloh during this thirty-

---

[5] *Id.* at 578.
[6] *Id.*
[7] *Id.*
[8] *Id.* at 578, 579.
[9] *Id.*
[10] *Id.* at 579.
[11] *Id.*
[12] *Id.* at 584.
[13] *Id.*
[14] *Id.*
[15] *Id.* at 589.

minute period.[16] By 7:25 a.m., Petitioner had checked into the East Jefferson Hospital to be treated for a gunshot wound, and he had an alibi for all times after 7:25 a.m.[17]

Shiloh's body was discovered around 7:00 p.m. on April 10, 2010.[18]

Dr. Richard Tracy performed the autopsy on the victim.[19] He offered an opinion with respect to Shiloh's time of death based on the lividity of the body, which is discoloration on the skin caused by the gravitational settling of the blood.[20] Dr. Tracy testified on direct examination that, based on the lividity of the body, death could have occurred as early as 4:00 a.m. on April 10, 2010 and as late as four to six hours before discovery.[21] On cross examination, he admitted that, at a meeting on July 11, 2012, he stated the victim died after 9:00 a.m., but that he could not exclude the possibility Shiloh died as early as 4:00 a.m.[22] On redirect examination, he stated he "could not scientifically exclude the possibility that the victim was killed between 5:00 a.m. and 5:30 a.m."[23]

On October 25, 2012, following a four-day trial, a jury found Petitioner guilty as charged.[24] His motion for a new trial was denied.[25] Petitioner was sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence.[26] Petitioner's motion to reconsider the sentence was also denied.[27]

Petitioner appealed the conviction. Among other assignments of error, Petitioner argued the trial court erred in (1) denying him the right to cross examine Dr. Tracy using

---

[16] *Id.*
[17] *Id.*
[18] *Id.* at 584.
[19] *Id.*
[20] *Id.* at 584–85.
[21] *Id.* at 585.
[22] *Id.*
[23] *Id.*
[24] *Id.* at 577.
[25] *Id.*
[26] *Id.*
[27] *Id.*

the book *Medicolegal Investigation of Death*, by Werner Spitz ("the Spitz Treatise"), which he argued was a "learned treatise" pursuant to Louisiana Code of Evidence article 803(18)[28] and (2) preventing the defense from cross examining Brown about an open warrant for Brown's arrest and Whitley about a pending felony charge.[29] On July 2, 2014 the Louisiana Fourth Circuit Court of Appeal affirmed the conviction and sentence. On March 27, 2015, the Louisiana Supreme Court denied Petitioner's application for a writ of certiorari without assigning additional reasons.[30]

Petitioner timely filed an application for a writ of habeas corpus on June 17, 2016.[31] He claims the trial court violated his rights under the Confrontation Clause of the Sixth Amendment when it limited his cross-examination of Dr. Tracy using the Spitz Treatise, his cross-examination of Brown regarding an open warrant for Brown's arrest, and his cross-examination of Whitley regarding a pending felony charge against her.[32] The State opposes.[33]

On August 15, 2017, Magistrate Judge Michael North issued a Report and Recommendation recommending that Petitioner's application for federal habeas corpus relief be dismissed with prejudice.[34] The Magistrate Judge determined that any error in the trial court's rulings did not have a substantial or injurious effect or influence on the verdict and found Petitioner is not entitled to habeas relief.[35] On August 29, 2017, Petitioner timely filed objections to the Report and Recommendation.[36]

---

[28] *Id.* at 589.
[29] *Id.* at 605.
[30] 2014-1648 (La. 3/27/15), 162 So. 3d 383.
[31] R. Doc. 1.
[32] *Id.* at 2.
[33] R. Doc. 4.
[34] R. Doc. 12.
[35] *Id.* at 36.
[36] R. Doc. 13.

## STANDARD OF REVIEW

In reviewing the Magistrate Judge's Report and Recommendation, the Court must conduct a de novo review of any of the Magistrate Judge's conclusions to which a party has specifically objected.[37] As to the portions of the report that are not objected to, the Court needs only determine whether these portions are clearly erroneous or contrary to law.[38]

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court must defer to the decision of the state court on the merits of a pure question of law or a mixed question of law and fact unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[39] A state court's decision is contrary to clearly established federal law if: "(1) the state court applies a rule that contradicts the governing law announced in Supreme Court cases, or (2) the state court decides a case differently than the Supreme Court did on a set of materially indistinguishable facts."[40] AEDPA requires that a federal court "accord the state trial court substantial deference."[41]

## ANALYSIS

The Sixth Amendment guarantees the accused the right "to be confronted with the witnesses against him."[42] This clause allows the accused the opportunity to cross-examine witnesses.[43] Accordingly, a Confrontation Clause violation may occur if the accused is

---

[37] *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which an objection is made.").
[38] *Id.*
[39] 28 U.S.C. § 2254(d)(1).
[40] *Williams*, 529 U.S. at 405–06.
[41] *Brumfield v. Cain*, 135 S. Ct. 2269 (2015).
[42] U.S. CONST. amend. VI.
[43] *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (quoting *Davis v. Alaska*, 415 U.S. 308, 316–17 (1974)).

improperly denied an opportunity to cross-examine a witness.[44] Nevertheless, trial judges retain the discretion to impose reasonable limitations on cross-examination for, among other reasons, "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."[45] The right to cross-examine allows the defendant "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."[46] Louisiana appellate courts review Confrontation Clause claims based on a trial judge's decision to exclude evidence for abuse of discretion.[47]

Furthermore, Confrontation Clause violations are subject to a harmless-error analysis.[48] "For reasons of finality, comity, and federalism, habeas petitioners 'are not entitled to habeas relief based on trial error unless they can establish that it resulted in "actual prejudice."'"[49] Actual prejudice occurs when the error "had a substantial and injurious effect or influence in determining the jury's verdict."[50] This actual prejudice requirement is known as the *Brecht* standard.[51]

In AEDPA cases, when a federal habeas petitioner contests a state court's determination that a constitutional error was harmless, the *Brecht* standard does not abrogate the limitations on federal habeas relief AEDPA sets out,[52] but rather "subsumes" the requirements AEDPA imposes.[53] As a result, a federal habeas court need not formally

---

[44] *Id.*
[45] *Id.* at 679.
[46] *Pennsylvania v. Ritchie*, 480 U.S. 39, 53 (1987) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)).
[47] *State v. Cyrus*, 2011–1175, p. 20 (La. App. 4 Cir. 7/5/12), 97 So.3d 554, 565 (citing *State v. Richardson*, 97–1995, p. 14 (La. App. 4 Cir. 3/3/99), 729 So.2d 114, 122).
[48] *Fry v. Pliler*, 551 U.S. 112, 116 (2007); *Fratta v. Quarterman*, 536 F.3d 485, 507 (5th Cir. 2008).
[49] *Davis v. Ayala*, 135 S. Ct. 2187, 2197 (2015) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).
[50] *Id.* at 2198 (quoting *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)). *Brecht*, 507 U.S. at 637.
[51] *Id.*
[52] In reviewing a harmless error decision under AEDPA, "a federal court may not award habeas relief under § 2254 unless the harmlessness determination itself was unreasonable." *Fry*, 551 U.S. at 119.
[53] *Davis*, 135 S. Ct. at 2197.

apply both *Brecht* and AEDPA.[54] "In sum, a prisoner who seeks federal habeas corpus relief must satisfy *Brecht*, and if the state court adjudicated his claim on the merits, the Brecht test subsumes the limitations imposed by AEDPA."[55] Accordingly, with respect to Petitioner's Confrontation Clause claims, this Court applies the *Brecht* test in determining whether any error was harmless.

## I.    Exclusion of the Spitz Treatise

At trial, during defense counsel's cross-examination of State expert witness Dr. Tracy, defense counsel elicited testimony that Dr. Tracy taught the subject matter in the Spitz Treatise and that the Spitz Treatise was a "preeminent book" in the field and "the kind of book that many pathologists all over the country rely upon."[56] However, Dr. Tracy also stated he would "hate to see it in evidence."[57] The State objected to putting the Spitz Treatise in evidence and, after an unrecorded bench conference, the trial court sustained the State's objection.[58] Out of the hearing of the jury, defense counsel stated on the record the following objection to the trial court's ruling:

> [W]hat Werner Spitz says is essentially that lividity is fixed after eight to ten hours. Therefore, it simply would not be possible to see the dual lividity on the body that Dr. Tracy testified to after more than ten hours from when the body is found, which was—is a very essential point from the defense.[59]

The defense called Dr. Collie Trant as an expert witness in anatomic and forensic pathology, and the State called Dr. James Traylor as a rebuttal witness in the field of forensic pathology.[60] During the defense's cross-examination of Dr. Traylor, defense

---

[54] *Id. (quoting Fry*, 551 U.S. at 119–20).
[55] *Id.* at 2199.
[56] State Appellate Opinion at 590.
[57] *Id.* at 591.
[58] *Id.*
[59] *Id.* at 591.
[60] *Id.* at 585–86.

counsel elicited testimony with respect to the Spitz Treatise's statements regarding lividity.[61]

On direct appeal, Petitioner argued the trial court violated his rights under the Confrontation Clause in denying him the right to cross examine Dr. Tracy using the Spitz Treatise.[62] The Louisiana Fourth Circuit did not analyze this constitutional argument, instead ruling on the correctness of the trial court's exclusion of the Spitz Treatise under article 803(18) of the Louisiana Code of Evidence, which creates an exception to the rule against hearsay for learned treatises "established as reliable authority by the testimony or admission of the witness."[63] The Louisiana Fourth Circuit found, in light of Dr. Tracy's statement that he would "hate to see" the Spitz Treatise in evidence, the trial court did not abuse its discretion in finding Dr. Tracy's testimony did not establish the Spitz Treatise was a reliable authority.[64] The Fourth Circuit also found that, even if the trial court had erred, any error was harmless because the jury heard Dr. Traylor's testimony regarding lividity, and all the experts testified they could not exclude the possibility Shiloh died between 5:00 a.m. and 5:30 a.m.[65] The Louisiana Supreme Court denied Petitioner's writ without assigning additional reasons.[66]

The Magistrate Judge assumed *arguendo* the state trial court erred in excluding the Spitz Treatise, but found the Louisiana Fourth Circuit's determination that any resulting error was harmless was a reasonable application of the Supreme Court's Confrontation Clause caselaw.[67] Petitioner objects, arguing the introduction of the

---

[61] *Id.* at 592.
[62] *Id.* at 589.
[63] LA. CODE. EVID. art. 803(18).
[64] State Appellate Opinion at 591.
[65] *Id.* at 591–92.
[66] 2014-1648 (La. 3/27/15), 162 So. 3d 383.
[67] R. Doc. 12 at 30.

textbook would have allowed him to fully cross-examine the witness and effectively establish his alibi.[68] He contends that, if the court had allowed the textbook to be introduced, the treatise would have established evidence contrary to Dr. Tracy's testimony and would have rebutted Dr. Tracy's conclusion on the time of death.[69]

"The mere violation of a state's evidentiary rules does not in itself invoke habeas review," and this Court must determine only whether any "error was of such a magnitude as to deny fundamental fairness to the criminal trial, thus violating the due process clause."[70] This Court does not review the correctness of the state courts' application of state evidentiary rules.

In this case, Petitioner argues his rights under the Confrontation Clause were violated when the state trial court limited the scope of his cross-examination of Dr. Tracy by preventing him from using a learned treatise.[71] The correctness of the state trial court's ruling on the hearsay issue is distinct from the issue of whether a Confrontation Clause violation occurred.[72] The alleged Confrontation Clause violation is the constitutional question before this Court. With respect to the Confrontation Clause, the United States Supreme Court has explained:

> The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination. . . . Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness'

---

[68] R. Doc. 13 at 3.

[69] *Id.*

[70] *Woods v. Estelle*, 547 F.2d 269, 271 (5th Cir. 1977).

[71] R. Doc. 13 at 3.

[72] Although "hearsay rules and the Confrontation Clause are generally designed to protect similar values," the United States Supreme Court has been "careful not to equate the Confrontation Clause's prohibitions with the general rule prohibiting the admission of hearsay statements." *Idaho v. Wright*, 497 U.S. 805, 814 (1990) (citations omitted).

> story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness.[73]

However, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."[74]

Petitioner raised his Confrontation Clause claim before the Louisiana Fourth Circuit, and the court adjudicated the issue on the merits, for purposes of AEDPA.[75] As a result, this Court determines whether the Louisiana Fourth Circuit's finding of no Confrontation Clause violation is contrary to clearly established federal law, as established by Supreme Court precedent. The United States Supreme Court has not addressed whether failure to admit potential impeachment evidence under an established exception to the hearsay rule during the testimony of an expert witness constitutes a violation of the Confrontation Clause. In light of the lack of precedent on the issue and the facts of the case, this Court finds the Louisiana Fourth Circuit's ruling was not contrary to clearly established federal law.

Even if the exclusion of the Spitz Treatise did violate the Confrontation Clause, this Court finds, under *Brecht*, that Petitioner has not met his burden of showing actual prejudice resulted from the exclusion. The introduction of the Spitz Treatise would have done little to bolster Petitioner's argument that Shiloh died after 9:00 a.m. Dr. Tracy testified that estimating time of death based on levity was a "crude guess" or "crude

---

[73] *Davis v. Alaska*, 415 U.S. 308, 315–16 (1974).
[74] *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985).
[75] *See Harrington v. Richter*, 562 U.S. 86, 98 (2011) ("By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (2). There is no text in the statute requiring a statement of reasons. The statute refers only to a 'decision,' which resulted from an 'adjudication.'").

judgment call."[76] The jury also learned the contents of the textbook statement on lividity when Dr. Traylor testified that, although lividity generally becomes fixed after eight to twelve hours, these times depend on temperature.[77] The Court notes that none of the three forensic pathologists who testified could exclude the possibility that Shiloh died between 5:00 a.m. and 5:30 a.m.[78] Furthermore, there was considerable other evidence of Petitioner's guilt. Petitioner's cell phone location established that he was relatively close to the location where the victim was shot.[79] He spoke to Mr. Brown on the phone, stating that he had an altercation with the victim.[80] Petitioner's version of events concerning his own gunshot wound had numerous inconsistencies and was not supported by any evidence.[81] As a result, the Court concludes Petitioner has not shown the evidentiary ruling actually prejudiced him by having a substantial and injurious effect or influence in determining the jury's verdict. Petitioner is not entitled to habeas relief on this basis.

## II.    Limitation on the Cross-Examination of Brown and Whitley

The state trial court prevented Petitioner from cross examining Brown regarding an alleged open warrant for his arrest and from cross examining Whitley regarding a pending felony charge against her.[82] Petitioner argues these limitations violated the Confrontation Clause.

---

[76] R. Vol. 6 at 63–65.
[77] R. Vol. 7 at 225–35.
[78] *Id.* at 29.
[79] *Id.*
[80] *Id.*
[81] *Id.*
[82] State Appellate Opinion at 605.

## A. Cross-examination of Searle Brown

Brown's parole officer testified at trial that Brown had not violated the terms of his parole for three years.[83] The State represented on appeal that the open warrant was "for failure to pay fines and fees in Baton Rouge."[84] The Louisiana Fourth Circuit found this information was not probative or serious enough to undermine the witness' credibility and stated, "If the matter of which defense counsel sought to question Mr. Brown about was serious enough to undermine his credibility, it can be presumed that his parole officer would have known of it and that it would have constituted a parole violation."[85] As a result, the appellate court found Petitioner had failed to show the trial court abused its discretion in sustaining the State's objection.[86] But even assuming *arguendo* the trial court had erred, the appellate court also found beyond a reasonable doubt the error was harmless.[87] The Louisiana Supreme Court denied Petitioner's writ application without assigning additional reasons.[88]

The Magistrate Judge found that "Hatfield had ample opportunity to expose potential bias or motivation on the part of Mr. Brown" because after "[t]he State initially brought out on direct examination Mr. Brown's prior convictions and the fact that he was currently on parole and would be for several more months," "Defense counsel had the opportunity to explore these topics at length with Mr. Brown during her cross-examination, searching for information that would suggest bias or motivation for his testimony, before she asked about the open warrant."[89] As a result, the limitation on

---

[83] *Id.*
[84] *Id.* at 606.
[85] *Id.*
[86] *Id.*
[87] *Id.* at 607.
[88] 2014-1648 (La. 3/27/15), 162 So. 3d 383.
[89] R. Doc. 12 at 35−36.

cross-examination did not have a substantial or injurious effect or influence on the verdict.[90] The Magistrate Judge found the state appellate court's finding of harmlessness was neither contrary to, nor an unreasonable application of, Supreme Court precedent. Petitioner objects, arguing the evidence was material.[91] Because petitioner objects, the Court will review this Confrontation Clause claim *de novo*.[92]

This Court finds the state appellate court's finding that the trial court did not violate the Confrontation Clause is not contrary to clearly established federal law. In *Delaware v. Van Arsdall*, a trial court "prohibited *all* inquiry into the possibility that [the witness] would be biased as a result of the State's dismissal of his pending public drunkenness charge."[93] The Supreme Court explained that, "[b]y thus cutting off all questioning about an event that the State conceded had taken place and that a jury might reasonably have found furnished the witness a motive for favoring the prosecution in his testimony, the court's ruling violated respondent's rights secured by the Confrontation Clause."[94] However, the Supreme Court cautioned, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."[95]

In *United States v. Hamilton*, the federal district court limited cross-examination concerning a witness's pending misdemeanor charges.[96] The United States Fifth Circuit,

---

[90] *Id.*
[91] R. Doc. 13 at 5–6.
[92] *See* 28 U.S.C. § 636(b)(1).
[93] 475 U.S. at 679.
[94] *Id.*
[95] *Id.*
[96] 48 F.3d 149, 155 (5th Cir. 1995).

interpreting United States Supreme Court Confrontation Clause precedent,[97] found the limitation was not an abuse of discretion because the witness "testified that he had received no promises by anyone in connection with his testimony" and "even stated that he was unaware of his pending warrant."[98] Similarly, in this case, Brown testified he was unaware of any pending warrants. As a result, the state trial court did not violate Petitioner's rights under the Confrontation Clause in limiting the cross-examination of Brown. The state appellate court's finding that the trial court did not abuse its discretion did not contravene clearly established federal law regarding the scope of cross-examination.

The Louisiana Fourth Circuit also found that, even if the trial court had erred, the error was harmless beyond a reasonable doubt.[99] During the State's direct examination of Brown, the State brought out Brown's prior convictions and the fact he was on parole.[100] Defense counsel asked Brown if there was a warrant out for his arrest, and Brown testified he was not aware of any.[101] As a result, the Court finds that, even if the state trial court had overruled the State's objection and admitted evidence of a pending arrest warrant, the evidence would not have been likely to show bias or motive to testify falsely, and it would not have had a substantial or injurious influence on the verdict. Petitioner has not met his burden of showing actual prejudice under *Brecht*.

---

[97] Although lower federal court precedent does not constitute "clearly established Federal law" for purposes of AEDPA, the Court may look to lower federal court interpretations of Supreme Court precedent in determining whether law is clearly established. *See Carey v. Musladin*, 549 U.S. 70, 76 (2006).

[98] *Id.*

[99] *Id.* at 607.

[100] R. Vol. 7 at 127–29.

[101] *Id.* at 132.

### B. Cross-examination of Shante Whitley

With respect to Petitioner's challenge to the limitation on his cross-examination of Whitley regarding her pending charge of aggravated battery, the Louisiana Fourth Circuit found that, because Whitley was close friends with Spikes, "one can surmise that their close friendship would have been an overriding motive" to testify falsely.[102] The appellate court found and the trial court could reasonably have found minimal the probative value of evidence of a pending charge in light of Whitley's friendship with Spikes.[103] The appellate court also found beyond a reasonable doubt that any error was harmless.[104] The Louisiana Supreme Court affirmed without assigning additional reasons.[105]

The Magistrate Judge found "questionable" the Louisiana Fourth Circuit's rationale, but found the error was harmless because most of Whitley's testimony was cumulative to Spikes' testimony.[106] The Magistrate Judge noted Whitley's testimony regarding the phone call was verified by independent phone records, and the actual voicemail recording was played for the jury.[107] As a result, the Magistrate judge found reasonable the state appellate court's determination that any error was harmless.[108] Petitioner objects.[109]

In *United States v. Alexius*, a federal district court limited cross-examination concerning a witness's pending felony charges in federal court.[110] The United States Fifth Circuit, interpreting United States Supreme Court Confrontation Clause precedent,

---

[102] State Appellate Opinion at 606.
[103] *Id.*
[104] *Id.* at 607.
[105] 2014-1648 (La. 3/27/15), 162 So. 3d 383.
[106] R. Doc. 12 at 34.
[107] *Id.*
[108] *Id.*
[109] R. Doc. 13 at 4–5.
[110] 76 F.3d 642, 646 (5th Cir. 1996).

distinguished *Hamilton* and found the district court abused its discretion because (1) "a witness is more likely to attempt to curry favor with prosecutors if he is facing felony charges," (2) the pending charges were federal and the trial was in federal court, and (3) the credibility determination was critical to the defendant's case.[111]

In this case, defense counsel and Whitley engaged in the following exchange on cross-examination:

> Q. Now, Ms. Whitley, coming to court to testify in this case, that's not the only reason you're in this building today, is it?
> A. Yes, it is.
> Q. You had your own court case today, didn't you?[112]

At that point, the prosecutor objected, and his objection was sustained. Like the witness in *Alexius*, Whitley had a pending felony charge. In fact, she had a proceeding in another section of the same court on the same day and lied about it when initially questioned about it. Under *Alexius*, Whitley's pending felony charge is relevant to show her motive for testifying falsely, and the fact she was friends with Spikes does not reduce the probative value of evidence of her pending charge. However, the Supreme Court has not ruled directly on this issue, and this Court finds the Louisiana Fourth Circuit's finding no Confrontation Clause does not conflict with clearly established federal law, as established by United States Supreme Court precedent.

The Louisiana Fourth Circuit found any error in connection with Whitley's testimony to be harmless. At trial, the State played the recording of the voicemail Petitioner left Whitley, during which he stated the victim wasn't "playing games" and that

---

[111] *Id.*; *see also Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (finding a Confrontation Clause violation when the "trial court prohibited *all* inquiry into the possibility that [a witness] would be biased as a result of the State's dismissal of his pending public drunkenness charge") (emphasis in original).
[112] R. Vol. 6 at 165–66.

it was "over with."[113] The voicemail spoke for itself, regardless of whether or not the jury found Whitley credible. Moreover, Whitley testified she had been friends with Spikes for over sixteen years,[114] which could also call into question her motive for testifying. This Court finds Petitioner has not met his burden of showing, under *Brecht*, that any error resulted in actual prejudice to him. The Court denies Petitioner's request for habeas relief on the basis of the state trial court's limitation on his cross-examination of Brown and Whitley.

## CONCLUSION

For the reasons above, the Court approves the Magistrate Judge's Report and Recommendation[115] and adopts it as its opinion in this matter.

**IT IS ORDERED** that the petition of Jimmy Hatfield for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 is hereby **DISMISSED WITH PREJUDICE**.

**New Orleans, Louisiana, this 23rd day of September, 2019.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[113] *Id.* at 159.
[114] *Id.* at 148.
[115] *Id.*